533 So.2d 1383 (1988)
William Buck TAYLOR, III, M.D.
v.
FIRST JERSEY SECURITIES, INC., Cris Blackman, and Leonard Alsfeld.
Nos. 88-CA-0388, 88-CA-0861.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1988.
Rehearing Denied December 14, 1988.
*1384 Jacques F. Bezou, P.L.C., Trial Atty., DeRussy, Bezou and Matthews, New Orleans, for plaintiff/appellant.
Thomas K. Potter, III, Robert B. Bieck, Jr., Denise R. Krouse, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants/appellees.
Before BYRNES, WILLIAMS and PLOTKIN, JJ.
PLOTKIN, Judge.
Appellant William Buck Taylor III, M.D. appeals the trial court's granting of an exception of no cause of action in favor of appellees, First Jersey Securities, Inc. and Leonard Alsfeld. We reverse in part and remand.
Dr. Taylor brought suit against First Jersey, Alsfeld and Cris Blackman, a former First Jersey registered representative, alleging violations of the Louisiana "Blue Sky" Securities Law (Blue Sky Law), the Louisiana Unfair Trade Practices and Consumer Protection Act (UTPA) and Louisiana Civil Code articles 1930, 2315-2317, 2320 and 2324, in connection with Dr. Taylor's stock purchases. He alleged that Blackman used "high pressure" sales techniques and fraudulent misrepresentations to induce him to make a number of purchases of extremely speculative stock, despite his express statements that he wished to purchase only "high quality bonds." Specifically, appellant claimed that Blackman told him that First Jersey had a "fantastic *1385 research department" and that the network of First Jersey dealers could manipulate the stock they purchased for their clients and thus keep it from dropping. Dr. Taylor also alleged that he discovered the fraud after Blackman left his position at First Jersey and moved to Nashville, Tennessee, when Blackman started making frequent telephone calls telling Dr. Taylor that First Jersey "practices illegal tactics in buying and selling stocks." Dr. Taylor alleged that, at all pertinent times, Alsfeld was Blackman's supervisor at First Jersey.
The petition concludes by alleging that Blackman's improper conduct "consisted of high pressure tactics, the sale of inappropriate stock, churning, numerous breaches of his fiduciary duty to the petitioner and fraud." Alsfeld should be liable, the petition stated, because he "knew and in fact encouraged the conduct of defendant Blackman, failed to supervise his activities, [and] failed to enforce any compliance on the part of defendant Blackman." Dr. Taylor sought recovery of his investments, plus treble damages and punitive damages.
First Jersey and Blackman filed an exception of no cause of action, alternatively motion for summary judgment, contending that Taylor had no cause of action under Louisiana's Blue Sky Law or the UTPA, that he had no cause of action for churning under any law and that he had no cause of action against defendant Alsfeld. The trial court granted the exception without written reasons. Dr. Taylor appealed, claiming the petition stated a cause of action for violations of the state Blue Sky Laws and the UTPA and that the petition stated a cause of action for damages caused by negligence and fraud.
Standard of Review
The purpose of an exception of no cause of action is to allow the court to determine the legal sufficiency of the plaintiff's petition. Darville v. Texaco, Inc., 447 So.2d 473, 474 (La.1984) (per curiam), reh'g denied, 448 So.2d 1302 (La.1984). The exception must be tried on the face of the pleadings and all well-pleaded facts must be accepted as true. Ermert v. Hartford Ins. Co., 480 So.2d 999 (La.App.4th Cir.1985), writs denied, 484 So.2d 672 (La.1986); La. C.C.P. art. 927. The exception must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based. Darville, supra. If it is possible for the plaintiff to adduce some admissible evidence which would entitle him to relief, the exception should not be granted. Id.
Louisiana Blue Sky Law
The Louisiana Blue Sky Law, LSA-R.S. 51:701 et seq., provides, in pertinent part, as follows:
Sec. 712. Unlawful practices
A. It shall be unlawful for any person:...
(2) To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.
Sec. 714. Civil liability from sales of securities
A. Any person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover....
The above provisions have not been interpreted by Louisiana courts. In brief, the parties agree that parts of the Louisiana Blue Sky Law are analogous to provisions of the federal Securities Act of 1933 and that LSA-R.S. 51:712(A)(2) is analogous to Section 12(2) of the 1933 Act. Courts may therefore look to the federal law and jurisprudence interpreting the securities law for guidance in interpreting the Louisiana provisions. Gour v. Daray Motor Co., Inc., 373 So.2d 571, 578 (La.App.3d Cir.1979), writ granted 376 So.2d 1270 (La.1979), writs dismissed, 377 So.2d 1033 (La.1979).
The parties also agree that the plaintiff must prove the following elements to prevail *1386 in an action under Section 12(2) of the Securities Act of 1933: (1) the defendant made a false or misleading statement of a material fact or failed to state a material fact necessary in order to make the statement not misleading; (2) the plaintiff did not know of the untruth or omission; (3) the defendant knew, or in the exercise of reasonable diligence, could have known, of the untruth or omission. Junker v. Crory, 650 F.2d 1349, 1359 (5th Cir.1981); Hill York Corp. v. American Int'l Franchises, Inc., 448 F.2d 680, 695 (5th Cir.1971).
Based on the above elements and assuming that all the allegations in Dr. Taylor's petition are true, we find that appellant's petition states a cause of action against Blackman under the Louisiana analogue to Section 12(2), LSA-R.S. 51:712(A)(2). Dr. Taylor made specific allegations (1) that defendant Blackman made false statements of material fact, (2) that he [Dr. Taylor] was unaware of the untruth of the statements and (3) that Blackman was aware of the untruth of the statements. Those allegations are sufficient to state a cause of action. The trial court's granting of the exception of no cause of action was in error because it is possible for the plaintiff to adduce some admissible evidence which would entitle him to relief under Louisiana's Blue Sky Law. See Darville, supra.
Defendants argue strenuously in brief that the exception of no cause of action was properly maintained because no federal or state courts have ever recognized a cause of action for "suitability" or "churning" under Section 12(2) of the Securities Act of 1933. "Suitability" claims are based on allegations that the broker recommended and sold to the plaintiff securities which were inconsistent with the plaintiff's financial situation, experience and investment objectives, while "churning" occurs when a broker acts in his own interest to generate commissions and against his customer's interest by inducing transactions which are excessive in size and frequency in light of the character and investment objectives of the customer. Appellees cite a number of cases in which suitability and churning causes of action were allowed under Section 10(b) of the Securities Act of 1934, then argue that Section 10(b) is the only appropriate section under which to bring such actions. We refuse to adopt this argument and hold that the language of LSA-R.S. 51:712(A)(2) is broad enough to encompass allegations of suitability and churning. The cases cited by appellees do not limit those actions to Section 10(b), but instead only state that the actions are appropriate under that section. Additionally, the petition made sufficient allegations to establish a cause of action for both suitability and churning. Therefore, we hold that the trial judge erred in dismissing plaintiff's claims under the Louisiana Blue Sky Laws. The appellant does have a cause of action for both suitability and churning under that law.
In addition to the above arguments, appellees argue that plaintiff failed to state a cause of action for churning because he did not allege that any securities were sold or traded from his account with First Jersey. We agree that Dr. Taylor's allegations that Blackman churned his account are based solely on the fact that Blackman allegedly made excessive purchases on Dr. Taylor's account, but find that this fact does not make the petition deficient. The elements of a cause of action for churning, set out by the appellees, are (1) excessive trading in his account, (2) the broker's exercise of control over that account and (3) the broker's scienter. Miley v. Oppenheimer & Co., 637 F.2d 318, 324 (5th Cir.1981); reh'g denied, 642 F.2d 1210 (5th Cir.1981). We find that Dr. Taylor's petition makes all the required allegations. Although appellees correctly cite a number of federal cases which evaluate "excessive trading" by considering the "turnover ratio" in the account, those cases do not stand for the proposition that an excessive turnover ratio is the only evidence of excessive trading. Buying stocks is also trading and appellant properly alleged that Blackman undertook to buy more stocks than he intended to buy. Therefore, the exception of no cause of action concerning Dr. Taylor's churning claims was improperly granted.
*1387 Liability of Alsfeld
LSA-R.S. 51:714(B) provides for liability of persons other than the actual seller of the security. It states as follows:
Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist ...
"Control" is defined in the Louisiana Blue Sky Law as "possession, direct or indirect, of the power to direct or cause the direction of the management of the policies of a person." LSA-R.S. 51:702(4).
Under the above provisions, we find that appellant's petition stated a cause of action against Alsfeld. Dr. Taylor's allegation that Alsfeld served as Blackman's supervisor at all pertinent times is sufficient to state a cause of action against Alsfeld as a person who directly or indirectly controlled Blackman. We reject all of defendants' arguments in brief that Alsfeld does not qualify for respondeat superior, aider and abettor or supervisory vicarious liability under existing Louisiana law. The statute in question here, LSA-R.S. 51:714(B), specifically provides for liability on the part of all persons who have any control over the defendant wrongdoer. That liability is not dependent on prior jurisprudence or existing causes of action. Therefore, the exception of no cause of action as to Alsfeld was improperly granted.
Unfair Trade Practices Act
Appellant alleges that the petition states a cause of action under the Louisiana UTPA, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." LSA-R.S. 51:1405(A). Appellee notes that the UTPA expressly exempts all actions and transactions subject to the jurisdiction of the state banking commissioner. Although the state banking commissioner is now called the Commissioner of Financial Institutions, appellee claims that securities violations fall under the banking commissioner's jurisdiction because the state Commissioner of Financial Institutions and state Commissioner of Securities are the same person. LSA-R.S. 51:710(A).
No Louisiana court has ruled on whether the UTPA applies to securities violations. However, in two decisions, federal courts in Louisiana have held that the Louisiana UTPA is not applicable to securities violations. Stephenson v. Paine Webber, Jackson & Curtis, 839 F.2d 1095 (5th Cir.1988), reh'g denied 849 F.2d 901 (5th Cir.1988); Moore v. A.G. Edwards & Sons, Inc., 631 F.Supp. 138 (E.D.La.1986). Our review of the applicable statutes and the federal cases convinces us that the federal court decisions are correct.
In Stephenson, supra, the Fifth Circuit delineated two reasons the UTPA should not be applied to securities violations. First, the court noted that treble damages are available under the UTPA, but not under the Blue Sky laws. Id. at 1101. The court concluded that the legislature would have provided for treble damages in the Blue Sky laws had it intended for treble damages to be available for securities violations. Id. Second, the Fifth Circuit noted that the federal analogue to the UTPA, the Federal Trade Commission Act, has been interpreted to preclude securities violations. Id. Finally, the court found that allowing securities claims under the UTPA would be inconsistent with the state statutory scheme for remedying securities violations because there would be a "functional overlap" between the investigative and enforcement duties of the Governor's Consumer Protection Agency, charged with those responsibilities under the UTPA, and the duties of the state banking commissioner *1388 [Commissioner of Financial Institutions] under the Blue Sky laws. Id.
We find the Fifth Circuit's reasons for excluding securities violations from the UTPA persuasive. Therefore, we hold that the trial court's granting of the exception of no cause of action as to the appellant's claims under the UTPA was proper.
Civil Code Violations
Appellants also claim to have stated a cause of action for fraud and negligence under Louisiana Civil Code provisions. Appellee argues that the original petition filed by appellant did not allege those Civil Code violations. We agree. Appellant's petition did not cite La. C.C. art. 1953, which defines fraud. However, he seeks to allege a cause of action under that article in this court. Uniform Rule of Appellate Procedure 1-3 prohibits parties from asserting a new, different cause of action for the first time on appeal. See Deville v. Pugh, 490 So.2d 800, 802 (La.App.3rd Cir.1986); Liberty Personnel, Inc. v. Children's Hospital, 487 So.2d 518, 522 (La.App.4th Cir. 1986). Therefore, we may not consider whether the appellant's petition asserted a cause of action for misrepresentation or fraud under that article. In brief to this court, appellant also cited La. C.C. art. 3016, in support of his position that Blackman breached his duty of fidelity to him. Like C.C. art. 1953, C.C. art. 3016 was not cited in appellant's original petition and we may not consider whether the original petition stated a cause of action under that article.
Additionally, appellant's brief to this court failed to address the Civil Code articles which were cited in his original petitionC.C. arts. 1930, 2315-2317, 2320 and 2324. Since he does not brief whether his petition stated a cause of action under those articles, we will consider those arguments abandoned.
Motion for Summary Judgment
Appellees correctly note that under the jurisprudence interpreting La. C.C.P. art. 2164 this court is authorized to treat the trial court's decision as a partial summary judgment. Roloff v. Liberty Mut. Ins. Co., 191 So.2d 901 (La.App.4th Cir. 1966). However, our review of the pleadings in this case indicates that, like the exception of no cause of action, a motion for partial summary judgment is also inappropriate as to the causes of action under the Louisiana Blue Sky Law. A motion for summary judgment is properly granted only if there is no genuine issue of material fact, considering the pleadings and other documents of record. Oller v. Sharp Elec., Inc., 451 So.2d 1235 (La.App.4th Cir. 1984), writ denied 457 So.2d 1194 (La. 1984). We find that issues of material fact still exist and therefore decline to dismiss appellant's petition on partial summary judgment.
Conclusion
For the reasons cited above, the trial court's granting of the exception of no cause of action is reversed as to appellant's claims against all defendants under the Louisiana Blue Sky Law and affirmed as to appellant's claims under the Louisiana UTPA and the Louisiana Civil Code. The case is remanded to the trial court for further proceedings.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
WILLIAMS, J., dissents in part.
WILLIAMS, Judge, dissents in part.
I agree that we may look to the Federal Securities Act of 1933, Section 12(2) in interpreting the analogous provisions of the Louisiana Blue Sky Law, LSA-R.S. 51:712(A)(2) and 714(A), and that appellant's petition states a cause of action against Blackman under that statute.
However, I do not agree that a cause of action for suitability and churning may be implied from the clear language of Sections 712(A)(2) and 714(A).
The majority holds "... that the language of LSA-R.S. 51:712(A)(2) is broad enough to encompass allegations of suitability and churning." The court reasons that cases which state that these actions are appropriate under the Federal Securities Exchange Act of 1934, Section 10(b), do *1389 not limit the actions to Section 10(b). In so holding, I believe the majority ignores the clear language of Sections 712(A)(2) and 714(A), which is the "starting point" in construction of the statute. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976), quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, 561 (1975) [Court considered whether scienter is a necessary element of a cause of action under Section 10(b)]; Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977) [Court considered whether complaint stated a cause of action for "fraud" under Rule 10b-5].
Section 714(A), as well as Section 12(2) of the 1933 Act after which Section 714(A) and Section 712(A)(2) are patterned, expressly creates a cause of action for violation of specific conduct proscribed in Section 712(A)(2), namely, untrue statements or omissions of material fact. Section 10(b) of the 1934 Act, on the other hand, does not expressly create a cause of action for violation of the conduct therein proscribed. Rather, it states, generally, "It shall be unlawful for any person, directly or indirectly,... to use or employ ... any manipulative or deceptive device ..." in connection with the purchase or sale of securities. Therefore, as distinguished from Section 712(A)(2), a cause of action under 10(b) must necessarily be judicially implied.
By stretching the language of 714(A) and 712(A)(2) to include actions of suitability and churning, the majority ignores the terms "untrue statement" and "omission" of material fact. These terms make clear a congressional intent to proscribe a conduct different from selling unsuitable securities or churning. Where a court is implying a private cause of action, "(t)he ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979) [Court held no implied private cause of action under Section 17(a) of the 1934 Act].
Furthermore, as the Supreme Court stated in Ernst & Ernst v. Hochfelder, supra at 1384, n. 19, quoting Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607 at 617-618, 64 S.Ct. 1215 at 1221, 88 L.Ed. 1488 at 1496 (1944), "(t)o let general words draw nourishment from their purpose is one thing. To draw on some unexpressed spirit outside the bounds of the normal meaning of the words is quite another. ... After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." Ernst & Ernst v. Hochfelder, supra [Court held no private cause of action under Section 10(b) absent allegation of scienter].
It is for these reasons that I believe suitability claims, when allowed, are implied under Section 10(b) rather than Section 12(2) and that the jurisprudence is replete with churning cases brought under Section 10(b), see Miley v. Oppenheimer & Co., Inc., 637 F.2d 318 (5th Cir.1981) and the cases cited therein, rather than under Section 12(2).
Since I disagree that a suitability or churning claim can be implied under Section 712(A)(2) and Section 714(A), I believe there is likewise no cause of action against defendant Alsfeld for suitability or churning under Section 714(B).
Accordingly, I dissent with the majority's opinion to the extent that it implies suitability and churning causes of action under LSA-R.S. 51:712(A) and 714(A), (B).