684 So.2d 350 (1996)
STATE of Louisiana
v.
William Earl POWDRILL, III & Uwe Schmidt.
No. 95-KA-2307.
Supreme Court of Louisiana.
November 25, 1996.
Rehearing Denied December 30, 1996.
*352 Richard P. Ieyoub, Attorney General, Kathleen Elizabeth Petersen, Baton Rouge, for Applicant.
James Harry Askew, Ansel Martin Stroud, III, Peter Joseph Rotolo, Shreveport, for Respondent.
JOHNSON, Justice.[*]
This case was brought before the court on direct appeal pursuant to La. Const. Art. V, Sec. 5(D) to determine whether certain provisions of the Louisiana Securities Law are unconstitutional. For the reasons stated herein, we affirm the trial court's finding that La. R.S. 51:712(A)(2) is unconstitutional as applied in the criminal context in that it impermissibly places the burden of proof upon defendants. We reverse the trial court's finding that La. R.S. 51:721(A) and (B) are unconstitutional.

FACTS AND PROCEDURAL HISTORY
On April 22, 1994, defendants William Earl Powdrill, III, a sales representative for the Biedenharn Investment Group, Inc. (B.I.G.), and Uwe Schmidt, vice president of B.I.G., were indicted on 20 and 11 counts respectively, for violating several provisions of the Louisiana Securities Law, formerly known as the Blue Sky Laws.[2] La. R.S. 51:701 et seq. Defendants were licensed as securities salesmen for B.I.G., a small stock brokerage firm headquartered in Shreveport, Louisiana. During the course of their employment, defendants sold or offered to sell, promissory notes issued by Towers Financial Corporation of New York City (hereinafter, Towers) to numerous investors, most of whom were primarily located in Northern Louisiana.
The bill of indictment alleges that defendants, on behalf of B.I.G. sold or offered to sell promissory notes on behalf of Towers between January 1988 and February 1993 in violation of Louisiana's securities laws.[3] Specifically, defendants were charged with selling the notes at interest rates higher than the rates stated in the offering documents, selling the notes by means of false statements, making false statements regarding the investor's net worth, and falsifying balance sheets indicating that the investor was accredited. B.I.G. was the only broker-dealer *353 in Louisiana licensed to sell the Towers product.
In February, 1993, the Towers empire collapsed. The B.I.G. investors who had purchased these notes from Towers received their last interest payment at that time, and were neither paid further interest on their investments, nor repaid the principal sum of their investments.
Powdrill has been charged under La. R.S. 51:712(A)(2) (five counts) with deliberately making false and/or misleading material oral statements to five investors. Powdrill allegedly stated that the notes were safe, and that there was no reason to expect that the investors could lose their principal investments. Schmidt was charged under La. R.S. 712(A)(2) with deliberately making false and/or misleading material oral statements to investors, all of which allegedly led these investors to conclude that the notes were safe, and that there was no reason to believe that the investors could lose their principal sums. Schmidt was also charged with giving one of the investors written materials to reinforce confidence in the Towers investment, said materials containing false and/or misleading information.
On July 20, 1995, prior to trial, defendants filed a motion to quash the indictment. The trial court ruled in favor of defendants holding that La. R.S. 51:712(A)(2) and La. R.S. 51:721(A) & (B) of the Louisiana Securities Law are unconstitutional. The trial court found that La. R.S. 712(A)(2) and 721(A) impermissibly placed the burden of proof upon defendants in violation of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that La. R.S. 721(B) denied defendants their constitutional right of confrontation. The state appealed these rulings directly to this court pursuant to La. Const. Art. V, Sec. 5(D).

BACKGROUND
The first securities act was adopted in Kansas in 1911. Comment, Steven M. Axler, "The Blue Sky Laws of Louisiana", 41 Loy. L.Rev. 1 (1995). The notion of securities regulations rapidly spread and by 1929, virtually every state had some form of securities regulation. Id. These statutes were known as "blue sky laws" after a Supreme Court decision describing their purpose as the prevention of "speculative schemes which have no more basis than so many feet of blue sky." Id. Louisiana enacted its first blue sky law in 1920. Landry v. Thibaut, 523 So.2d 1370, 1379 (La.App. 5th Cir.), writ denied, 526 So.2d 809 (La.1988). As evidenced by the stock market crash of 1929, these statutes were inadequate in combatting schemes involving interstate commerce. As a consequence of the failures of the various states' blue sky laws, federal securities laws were enacted. Comment, Steven M. Axler, "The Blue Sky Laws of Louisiana", 41 Loy.L.Rev. 1 (1995).
The purpose of the Securities Act of 1933 is to provide full and fair disclosure of the character of securities sold in interstate commerce, and to prevent fraudulent sales of the same. See Preface to Securities Act of 1933, Pub.L. No. 22-73d, 48 Stat. 74 (1933) (Codified at 15 U.S.C. §§ 77-77bbb (1988)). The provisions of the Louisiana Securities Law, (formerly known as Louisiana Blue Sky Law) are analogous to the provisions of the federal Securities Act of 1933. See Taylor, III, M.D. v. First Jersey Securities, Inc., 533 So.2d 1383 (La.App. 4th Cir.1988). Our courts therefore look to the federal law and jurisprudence interpreting the securities law for guidance in interpreting the Louisiana provisions. Taylor at 1385, citing Gour v. Daray Motor Co., Inc., 373 So.2d 571, 578 (La.App. 3rd Cir.1979), writ granted 376 So.2d 1270 (La.1979), writs dismissed, 377 So.2d 1033 (La.1979).
Section 12(2) of the Securities Act of 1933 creates the liability of sellers of securities who make material misstatements or omissions in prospectuses. Section 12(2) provides:
§ 771. Civil liabilities arising in connection with prospectuses and communications
Any person who
...
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the *354 use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they are made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the persons purchasing such security from him, who may sue either in law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security.... 15 U.S.C.A. § 771(2).
Analogous to the Securities Act of 1933, La. R.S. 712(A)(2) also creates the liability of sellers of securities who make material misstatements or omissions in prospectuses. Modeled after Section 12(2) of the Securities Act of 1933, La. R.S. 712(A)(2) provides in pertinent part:
§ 712 Unlawful practices
A. It shall be unlawful for any person:
...
(2) To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.
Because the jurisprudence of Louisiana's securities law is relatively undeveloped and there are virtually no cases dealing with criminal prosecutions under this law. Consequently, Louisiana courts have consulted federal decisions for guidance, particularly because this state's securities regulations are modeled after the federal Securities Act of 1933 and the Securities and Exchange Act of 1934. Taylor v. First Jersey Securities, Inc., 533 So.2d 1383 (La.App. 4th Cir.1988), writ denied, 538 So.2d 593, 594 (La.1989); see also, Ek v. Nationwide Candy Division, Ltd., 403 So.2d 780 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 732 (La.1981); Gour v. Daray Motor Co., Inc., 373 So.2d 571, 578 (La.App. 3d Cir.1979), writ granted, 376 So.2d 1270 (La.1979), writs dismissed, 377 So.2d 1033 (La.1979); Goldblum v. Boyd, 341 So.2d 436 (La.App. 2nd Cir.1976). Although the antifraud provisions of Louisiana's securities laws and the federal regulatory scheme are similar, they are not identical. Comment, Steven M. Axler, "The Blue Sky Laws of Louisiana", 41 Loy.L.Rev. 1 (1995). The major distinction between the federal Securities Act of 1933 § 712 and La. R.S. 51:712(A)(2), which serves as the crux of the appeal in the present case is that Section 12(2) of Securities Act of 1933 § 712 addresses civil liability only, whereas La. R.S. 51:712(A)(2) encompasses both civil and criminal liability.

I. Constitutionality of La. R.S. 51:712(A)(2)
In order to obtain a criminal conviction, La. R.S. 51:712(A)(2) requires the prosecution to prove that defendants (1) willfully; (2) offered to sell or sold; (3) a security; (4)(a) by means of any oral or written untrue statement of material fact or (b) any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and (5) the buyer not knowing of the untruth or omission. The "defense" provided by the statute requires the defendant to prove that "he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission" thereby proving his lack of guilty intent. La. R.S. 51:712(A)(2). The issue in the instant case is whether the truth of the defense would necessarily negate the mens rea or willfulness element of the statute.
The state contends that the last phrase of La. R.S. 51:712(A)(2) should be read as an *355 affirmative defense.[4] According to the state, much like the affirmative defense of good faith under federal law, the last phrase of La. R.S. 51:712(A)(2) should be read as an affirmative defense which the defendant may chose to avail himself, although he is not required to do so. The state further argues that the language of the statute should be rectified with jury instructions. Admitting that La. R.S. 51:712(A)(2) places the burden of proof on the defendant, the state proposes that the jury is instructed that "despite the plain language of La. R.S. 51:712(A)(2) referencing a burden on the defendant," (emphasis added) the state bears the burden of proving all elements of a crime beyond a reasonable doubt.
Due process requires that the state prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970); U.S. Const. amend. XIV; La. Const. art. 1 § 2; See also State v. McCoy, 395 So.2d 319, 323 (La.1980) (reh'g denied). In keeping with the mandates of In re Winship, however, states are not completely prohibited from reallocating burdens of proof on issues that have been removed "from the definition of the crime, thereby converting those issues from elements into matters of mitigation or enhancement." Holloway v. McElroy, 632 F.2d 605, 624 (5th Cir.1980), cert. denied, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). A classic example of this type of reallocating of the burden of proof is the affirmative defense of insanity.[5]
In deciding, however, whether the state has permissibly or impermissibly shifted the burden of proof to the defense, the U.S. Supreme Court held in Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), that an inquiry must be made as to whether the particular defense negates an essential element of the offense as defined by the legislature. See also, Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). "[T]he state may not place the burden of persuasion on [an] issue upon the defendant if the truth of the `defense' would necessarily negate an essential element of the crime charged." Holloway, 632 F.2d at 625.
This court has held that proof of willful behavior requires the state to show that defendant acted knowingly and deliberately. State v. Main Motors, Inc., 383 So.2d 327, 329 (La.1979). Furthermore, in the civil context, the Fourth Circuit has held that La. R.S. 51:712(A)(2) requires the plaintiff to show that "the defendant, knew, or in the exercise of reasonable diligence, could have known, of the untruth or omission." Taylor v. First Jersey Securities, Inc., 533 So.2d 1383, 1386 (La.App. 4th Cir.1988), writ denied, 538 So.2d 593, 594 (La.1989) (citing, Junker v. Crory, 650 F.2d 1349, 1359 (5th Cir.1981); Hill York Corp. v. American Int'l Franchises, Inc., 448 F.2d 680, 695 (5th Cir. 1971).). Consequently, proof by defendant that he did not know, and in the exercise of reasonable care could not have known, would negate the statutory element that defendant acted willfully or knowingly. We therefore reject the state's argument that the burden shifting language of the statute operates as an affirmative defense in the criminal context. We further reject the state's proposition *356 that we remedy the unconstitutional portion of the statute with jury instructions.
By comparison, in Adkins v. Bordenkircher, 674 F.2d 279 (4th Cir.1982), the court held that the burden of proof as to the "defense" of alibi could not be placed on a defendant because proof of alibi necessarily negates the essential element of any crime that the defendant participated in the criminal conduct. Similarly, in Holloway v. McElroy, supra, the court held that where the law of criminal homicide is defined in terms of an "unlawful" killing, the burden of proof as to the "defense" of self-defense may not be placed on the defendant because a killing in self-defense is not "unlawful."[6] Thus, based upon the applicable jurisprudence, we hold that the burden shifting language of La. R.S. 51:712(A)(2) is unconstitutional as applied in criminal cases, in that it impermissibly shifts the burden of proof of an essential element of the crime to defendants.

Severance
This court has held that constitutionally deficient portions of a statute can be severed from the statute if the unconstitutional portion can be removed without affecting the validity of the remaining statute. La. R.S. 24:175(A)[7]; State v. McCoy, 395 So.2d 319 (La.1980). It must be determined "whether the unconstitutional portions of the statute are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested by the Legislature in passing the Act." State v. Azar, 539 So.2d 1222, 1226 (La.1989), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989).
Statutes are presumed to be constitutional and it is the duty of this court to uphold the constitutionality of statutes whenever it can reasonably do so. In Interest of J.M., 590 So.2d 565, 570 (La.1991), citing State v. Griffin, 495 So.2d 1306 (La.1986) and Buras v. Board of Trustees of Police Pension of the City of New Orleans, 367 So.2d 849 (La.1979). Initially, it should be noted that Louisiana's Securities Law serve as both civil and criminal statutes. Consequently, La. R.S. 51:712(A)(2) can be utilized by plaintiffs alleging civil liability, as well as by the state alleging criminal liability. Regarding the conduct encompassed in La. R.S. 51:712(A)(2), there exists a major point of distinction between Louisiana's statutory scheme and the federal scheme: the federal scheme consists of two separate statutes, one criminal and one civil. See 15 U.S.C. § 771; 15 U.S.C. § 77q. The federal civil statute contains the same type of burden shifting language as does La. R.S. 712(A)(2) whereas the federal criminal statute does not.[8]
*357 To challenge a Legislative Act as unconstitutional on its face is the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. State v. Brown, 648 So.2d 872, 875 (La.1995), citing United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Application of La. R.S. 51:712(A)(2) in the civil context is a set of circumstances under which the statute is valid because the burden shifting language of the statute does not violate the defendants' constitutional rights. In the criminal context however, absent the burden shifting language, the statute is invalid because it would lack the mens rea or willfulness element of the crime. We therefore hold that the burden shifting language of La. R.S. 51:712(A)(2) is not severable from the remainder of the statute.

II. La. R.S. 51:721(A) & (B)

A. Standing

The state contends that the trial court erroneously held La. R.S. 51:721(A) and (B) unconstitutional. The state argues that defendants do not have standing to attack the constitutionality of La. R.S. 51:721(A) and (B) because this statute will not adversely impact their constitutional rights. The state maintains that it "has not and never had any intention of invoking" the statute.
This court has held as a general rule, in criminal proceedings, the accused may challenge the validity of a statute, practice or policy that adversely affects or threatens to adversely affect his rights. State v. McMahon, 391 So.2d 1120 (La.1980); State v. Brown, 389 So.2d 48 (La.1980). Further-more, it is sufficient to show that there is a realistic danger of sustaining a direct injury as a result of the operation or enforcement of the law. See e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101-102, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983); Babbitt v. United Farm Workers National Union, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); Groppi v. Wisconsin, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317 (1946).
La. R.S. 51:721 provides in pertinent part:
A. In any action, civil or criminal, where a defense is based upon any exemption provided for in this Part, the burden of proving the existence of the exemption shall be upon the party raising such defense.
B. In any action, civil or criminal, a certificate signed and sealed by the commissioner, stating compliance or non-compliance with this Part, shall constitute prima facie evidence of such compliance or non-compliance with this Part and shall be admissible in any such action.
As the trial court noted, La. R.S. 51:721 is an evidentiary statute. Section B concerns the admission into evidence of a certificate from the commissioner and its affect at trial.[9] The evidence reveals that the state admitted such a certificate into evidence in the grand jury proceedings. Such evidence could, and most likely would, be applicable in the prosecution of this matter. Therefore, the statute threatens to adversely affect the defendants' rights. In light of the pertinent jurisprudence, defendants have standing to attack the constitutionality of La. R.S. 51:721. Further, La. R.S. 51:721(A) allows a defendant to prove that his actions constitute an exemption to the securities law.[10] This subsection can be utilized if a defendant is charged under the provisions of La. R.S. 51:703, which deals with the registration of dealers, *358 salesmen, and investment advisers, as well as surety bonds and records. This statute also threatens to adversely affect defendant's rights.

B. Confrontation

The state also contends that the trial court improperly found that R.S. 51:721(B) violates defendants' right of confrontation. In so holding, the trial court reasoned that by allowing the introduction into evidence of a certificate stating non-compliance, defendants would be denied their right of confronting (i.e., cross-examining) the commissioner about this finding.[11] This reasoning is flawed in several respects.
Initially, it should be noted that this subsection can be equally utilized by either party (the state or defendant). Thus arguably, a defendant could offer a certificate from the commissioner as evidence of his compliance with the securities laws which would be prima facie proof of that compliance.
Additionally, the statute does not preclude the defense from calling the commissioner as a witness and "cross-examining" him. Defendants are entitled to subpoena the commissioner and question him about the preparation of the certificate of non-compliance and the information on which it is based. La.C.Cr.P. art. 731 ("The court shall issue subpoenas for the compulsory attendance of witnesses at ... trials when requested to do so by ... the defendant ...."); see generally, U.S. Const. amend. VI, XIV; La. Const. art. 1 § 16 (right to compulsory process); Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam).
Furthermore, R.S. 51:721(B) acts as nothing more than a firmly rooted evidentiary exception to hearsay which does not violate a defendant's right of confrontation. La. C.E. art. 803(8), for example, would allow the admission of similar evidence. Art. 803 provides that certain types of public records and reports are not excluded by the hearsay rule. Arguably, a certificate stating compliance or non-compliance as described in R.S. 51:721(B), could also be admitted into evidence pursuant to several subsections of C.E. 803(8), for example, (a)(i) records regularly recorded by a public agency or (b)(ii) factual findings offered by the prosecution in a criminal case. In Idaho v. Wright, 497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990), the United States Supreme Court held that firmly rooted exceptions to the hearsay rule do not violate a defendant's right of confrontation. "Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." Id. The public records exception to hearsay is firmly rooted. Louisiana jurisprudence has long recognized "the traditional `public documents' exception to the rule against hearsay." State v. Nicholas, 359 So.2d 965, 968 (La.1978). "This exception is historically based upon the principles of necessity and the probability of trustworthiness." Id. (citing, 5 Wigmore on Evidence, Sections 1631, 1632 (Chadbourne Rev., 1974)); see also, McCormick, Evidence §§ 281-290 (Strong ed. 1992) (Most American jurisdictions have long recognized a public and business records exception to the hearsay rule.). Thus, although R.S. 51:721(B) is not contained in the Louisiana Code of Evidence, it nevertheless functions as a public records exception to the hearsay rule and can be characterized as a further articulation of C.E. art. 803(8). Consequently, R.S. 51:721(B) does not violate defendants' right to confrontation and therefore is constitutional.

C. Impermissible Shifting of the Burden of Proof

The state further contends that the trial court erroneously found that R.S. *359 51:721(A) shifts the burden of proof to defendants. The trial court reasoned and defendants contend that 721(A) is unconstitutional because it places the burden of proof on defendants to show that their conduct did not fall within the purview of the securities law because a valid exemption applies. According to defendants, this subsection permits the state to obtain a conviction without having to prove every element of the crime beyond a reasonable doubt. This, however, is a misreading of the applicable jurisprudence detailed supra.
La. R.S. 51:701 et seq has codified what the state legislature has determined will be criminal conduct in the securities field. Within this chapter, the legislature has also codified certain exemptions/exceptions. See La. R.S. 51:708 (Exempt securities); 51:709 (Exempt transactions). By creating these exemptions, in effect the legislature has provided for a type of "affirmative defense" for defendants. The legislature has also mandated that the defendant carry "the burden of proving the existence of the exemption...." La. R.S. 51:721(A). This type of "burden shifting" is found in many criminal statutes and is not unconstitutional because proof of the "defense" does not necessarily negate an essential element of the crime. Patterson v. New York, supra.
Furthermore, the type of statutory construction which shifts the burden of proof to the defendant to prove he fits into a codified exemption/exception has been utilized in numerous other criminal statutes. La. R.S. 14:76, which criminalizes bigamy, is an example of such a statute which has codified specific defenses or exemptions to the statute and has placed the burden of their proof upon the defendant. Bigamy is defined as "the marriage to another person by a person already married and having a husband or wife living...." La. R.S. 14:76. A defendant, however, will not be convicted, if he can show, that his previous spouse was absent at the time of the second marriage for five successive years "without being known to such person, within that time, to be living...." La. R.S. 14:76(1); see State v. Cain, 106 La. 708, 31 So. 300 (1902) (Court held where a defendant, prosecuted for bigamy, undertook to show that he contracted the second marriage in the honest belief that the first had been dissolved by a decree of divorce, the burden was on him to show reasonable grounds for such belief and that he did so believe). In addition, it has generally been held by both federal and state courts that the burden of proof (or specifically the burden of persuasion) may properly be placed upon the defendant as to other affirmative defenses or exemptions such as insanity, intoxication, duress and self-defense. See LaFave and Scott, Substantive Criminal Law, § 1.8, p. 75. In the instant case, the burden shifting language of this section is constitutionally permissible because proof of the exemption does not necessarily negate an essential element of the crime.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[*] Pursuant to Rule IV, Part 2, Section 3, J. Victory was not on panel. The panel consisted of Justice Johnson, Chief Justice Calogero, and Justices Bleich, Kimball, Lemmon, Marcus and Watson.
[2] James McCurry, president of B.I.G. was also indicted on 39 counts for various violations of these same laws. On July 6, 1995, McCurry pled nolo contendere to a single violation of La. R.S. 51:712(D)(2). In exchange for this plea, the remaining 38 counts were dropped.
[3] Pursuant to La. R.S. 51:702(15)(a), promissory notes are considered securities for purposes of the Louisiana Securities Law.
[4] Federal courts have recognized numerous affirmative defenses in the context of criminal prosecution for securities fraud. See United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1403-1404 (4th Cir.1993) (good faith reliance on advice of counsel not a complete defense to allegations of wilful misconduct in criminal securities fraud prosecution but merely one factor for the jury to consider when determining defendants' state of mind); United States v. Schaefer, 299 F.2d 625, 629 (7th Cir.1962), cert denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962) (defense claims of ignorance in that defendants did not make misrepresentations, or if they did, they relied on others without checking the accuracy is unavailing "where the defendant, by the exercise of due diligence, could have become aware of his mistakes, especially where others may suffer a loss by his misstatements"); Greenhill v. United States, 298 F.2d 405, 411 (5th Cir.1962), cert denied, 372 U.S. 968, 83 S.Ct. 1092, 10 L.Ed.2d 130 (1963) (honest belief in the ultimate success of venture does not justify false representations); and Sparrow v. United States, 402 F.2d 826 (10th Cir.1968).
[5] The defense bears the burden of proof of insanity by a preponderance of the evidence. C.Cr.P. art. 652; State v. Lee, 395 So.2d 700 (La.1981); State v. Roy, 395 So.2d 664 (La.1981).
[6] Cf. Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (Court held that defendant's conviction of second-degree murder did not deprive him of due process by placing on him the burden of proving the defense of acting under the influence of extreme emotional distress, in order to reduce the crime of manslaughter in the first degree, where the defense did not serve to negate any of the elements of the crime which the state had to prove in order to convict for murder, such as intending to cause the death of another person and causing the death of such person; rather the defense constituted a separate issue).
[7] La. R.S. 24:175(A) provides in pertinent part "... the provisions of each act of the legislature are severable, whether or not a provision to that effect is included in the act. If any provision or item of an act, or the application thereof, is held invalid, such invalidity shall not affect other provisions, items, or applications of the act which can be given effect without the invalid provision, item, or application."
[8] Civil liability in the federal arena is imposed pursuant to 15 U.S.C. § 771, which provides: Any person who

(2) offers or sells a security ... by use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact necessary or omits to make a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
...
Criminal liability, on the other hand, is imposed pursuant to 15 U.S.C. § 77q which provides:
(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
Additionally, 15 U.S.C. § 77x provides the penalties for any willful violation of this provision.
[9] "`Commissioner' means the commissioner of financial institutions who is also the commissioner of securities." La. R.S. 51:702(3).
[10] See La. R.S. 51:708 (Exempt securities); La. R.S. 51:709 (Exempt transactions).
[11] Specifically, the trial court stated:

... Paragraph (B) denies the confrontation of witnesses. I don't know what the Commissioner could put in a certificate. I mean a certificate is a recitation that certain facts are true and correct and certifies their facts to be true and correct. He can just put down a whole raft of facts and certify them to be true and correct and its filed in the record as prima facie proof. No that's denial of confrontation. (Rec. p. 63).