YELVERTON, Judge.
In this open account suit the principal, a hospital, sought to avoid the demands of certain television broadcasting stations for advertising services, by presenting the defense that its agent, an advertising agency, was solely responsible to the broadcasters for those services. The trial court applied the law of agency and gave judgment to the broadcasters. In this appeal, while conceding that the relationship of principal-agent existed between it and the advertising agency, the hospital argues the existence of what it terms were unique facts that support estoppel and custom as its defenses against responsibility. We have carefully examined the record and the defendant’s arguments and we hold, as did the trial judge, that the proffered defenses do not avail defendant on the facts and the law. We affirm.
The dispute arose because the advertising agency went bankrupt. The loss occurred because, after the agency had been paid a portion of the money for the advertising by its principal, the hospital, it did not pay the broadcasters, spending the money instead for other purposes.
The plaintiffs were: (1) Texoma Broadcasters, Inc., d/b/a KLFY-TV (“KLFY”); the Abellor Corporation, d/b/a KATC-TV (“KATC”); and KADN Broadcasting, Inc., d/b/a KADN-TV (“KADN”), (collectively “broadcasters”), all doing business in the Parish of Lafayette.
The defendant was HCA Health Services of Louisiana, Inc., d/b/a Cypress Hospital (Cypress), of Lafayette. KLFY sued for $12,469.50; KATC for $8,852.71; and KADN for $6,324.71; the demands totaled $27,646.92, and asked for interest, attorney’s fees, and costs. Judgment was rendered in the trial court as prayed for, including attorney’s fees of 25% of the princi *782 pal and interest in accordance with LSA-R.S. 9:2781.
The advertising agency in this case was Media Associates, Inc. (herein “Agency”), of Lafayette. Agency began doing business with Cypress under a written contract in 1983. Before it used the local Agency as its agent for advertising, Cypress used a national advertising agency. The unpaid bills which formed the basis for this lawsuit accumulated between March and August of 1985. August was when the Agency declared bankruptcy.
Throughout its relationship with the Agency, Cypress, as it had done with its former advertising agent, relied on the Agency to place its advertisements with the local broadcasters. The Agency would produce an advertisement and, after getting the approval of Cypress, it would make arrangements with the local broadcasters to broadcast the advertisement in accordance with an agreed schedule. The broadcasters would then send the Agency an itemized statement. The agency would collect the amount of the statement from Cypress, and then the Agency would — or was expected to — pay the broadcasters.
The testimony indicates that the Agency from the beginning, as far back as 1983, had a habit of being late in paying the broadcasters. Its tardiness often ranged from 90 to 120 days. The broadcasters sometimes called the Agency’s attention to its tardiness and had to ask for payment on many occasions. The situation grew worse as time passed. There was conflicting testimony as to whether Cypress knew of the Agency’s habitual tardiness. Finally, in August 1985 the Agency closed its doors. At that time most of the amounts that were sued for had been paid by Cypress to the Agency, and the Agency, rather than paying the broadcasters’ accounts for Cypress, had paid other accounts instead, with the result that these amounts were uncol-lectible from the Agency. The broadcasters by means of this suit turned to Cypress.
Cypress’ defense rests principally upon two arguments, estoppel and custom. Its estoppel argument is based upon several premises. First, it contends that from the time the Agency took over the Cypress account (September 1983) until it closed its doors (August 1985), a period of two years, the deteriorating financial condition of the Agency, and its increasing tardiness in the payment of its bills, were facts known by the broadcasters but not known by Cypress. It contends that the broadcasters did business entirely with the Agency, gave indications that they looked to the Agency as being solely responsible to them for the broadcasting charges, and never gave any indication to Cypress that they would ultimately look to Cypress for the payment of those charges. Cypress contends that the broadcasters, furtively abiding an intention to ultimately look to Cypress, owed Cypress the obligation of advising it as to the deteriorating financial condition of the Agency, an equitable obligation which the broadcasters did not fulfill. Cypress finally contends that because of the failure of the broadcasters to meet their equitable obligations in the premises, Cypress was permitted to keep on paying the Agency when it was apparent or should have been apparent, that the Agency was not going to financially survive and that somebody was going to lose. This is the argument which Cypress contends is the equitable basis upon which the broadcasters should now be held estopped from claiming reimbursement from Cypress, reimbursement which will require Cypress to pay about two-thirds of these bills twice.
Its second argument in defense of the case is that it is custom in the broadcasting industry that where business is done with full service advertising agencies such as the agency in this case, the broadcasters will look to the advertising agency for the payment and not to the advertising sponsor, which was Cypress in this case.
In essence, its defense is that while this was an agency relationship between Cypress and the Agency, the relationship between Cypress and the third party, the broadcasters, was not the usual one routinely resulting when business is done with an agent in his known capacity as an agent, but that this relationship was an unusual *783 one modified first by estoppel and second by custom.
Cypress concedes that the relationship of principal-agent existed between it and its agency. It would be difficult for Cypress to deny the agency, because it introduced into evidence a written contract — a proc-uration in the parlance of C.C. Art. 2985— between it and the Agency by which Cypress gave to the Agency the specific power to transact for it and in its name, the business of television and radio advertising. La.C.C. Art. 2985 defines mandate (agency) as: “... an act by which one person gives power to another to transact for him and in his name, one or several affairs.”
The articles of the Civil Code dealing with mandate (common law agency) are C.C. Arts. 2985 through 3034. These articles cover the nature and form of mandates, the obligations of a person acting under a power of attorney, and cases where a person is a mandatory or agent of both parties. For the most part, these articles deal with the powers, duties and responsibilities of mandataries, and the relationship between mandataries and their principals.
The rights of third parties (those with whom the mandatary transacted the affair of his principal) are also the subject of these articles, though in a limited way. Article 3021 makes the principal responsible for the contracts made for him by his agent. Frank’s Door and Building v. Double H. Construction Company, Inc., 459 So.2d 1273 (La.App. 1st Cir.1984). The mandatary may also be responsible to a third person with whom he contracts when he has bound himself personally (a personal guarantee), or when he has exceeded his authority without having exhibited his powers. Articles 3012 and 3013.
The agency’s liability in this case is not an issue. The plaintiffs sued only the principal, Cypress, and the ultimate question before us is whether Cypress is liable. Since it is clear that there was a principal-agent relationship between Cypress and the Agency, and the agent acted entirely within its disclosed authority in causing the advertisements to be broadcast, there can be no question that the trial court correctly found that Cypress was responsible to the broadcasters.
The defense of equitable estoppel is designed to prevent a miscarriage of justice by preventing one from taking a position contrary to his prior acts, admissions, representations or silences when another has changed his position in detrimental reliance thereon. It is to be used cautiously because it bars the normal assertion of rights otherwise present. There must be reliance that is justified. Cudahy Foods Co. v. Rich Plan of Baton Rouge, Inc., 349 So.2d 894 (La.App. 1st Cir.1977), writ denied 351 So.2d 172 (La.1977).
The defense of equitable estoppel in this case is a weak one. Throughout the two years that it allowed Media Associates to act as its agent, Cypress did not change its position in justified reliance on any act, representation or silence on the part of any of the broadcasters. This conclusion assumes that Cypress was not aware that the agency was slow in paying, and that it had been slow from the very outset of the principal-agent relationship. We reject the defense of equitable estoppel.
The industry custom defense asserted by Cypress is inconsistent with its acknowledgment that a principal-agent relationship existed. This defense, Cypress argues, is that the broadcasters regarded themselves as doing business only with Media Associates, and that therefore, Media Associates was the only party to which they looked for payment. If this was indeed the case, then Media Associates would have been contracting with the broadcasters for itself, and not for Cypress, and accordingly it would not have been the agent for Cypress. Be that as it may, we do not find in this record any evidence that there exists a general industry custom that advertising agencies are solely responsible for the advertisements placed for their clients. The evidence, rather, shows that broadcasters may sometimes require, in addition to the responsibility of the principal, a guarantee of the obligation from the advertising agency where the principal’s credit is unknown or doubtful. In cases, as in *784 the present case, where the credit of the principal is unquestionably reliable, no security in the form of a personal guarantee is required. In any event, the testimony revealed no prevailing practice in the present case whereby the broadcasters gave up their right to proceed against the principal and agreed to substitute the agent only as their debtor. Thus, even if the evidence did show that the broadcasters looked to Media Associates for payment, and believed Media Associates legally responsible, this would not operate to discharge the liability of the principal, Cypress. This defense does not avail Cypress.
In addition to raising these two above defenses, Cypress also argues that it was error for the trial court to refuse to receive into evidence demand letters written by the broadcasters to Media Associates, showing that the broadcasters looked to Media Associates for payment. We have examined these letters, which were offered as a proffer, and we find that the trial court did not err in refusing to admit them. The letters demanded payment, and threatened legal action. They are routine letters containing language which might be expected for accounts six months past due. The letters have no evidentiary import insofar as the liability of the principal, Cypress, is concerned.
Finally, Cypress complains that it would be inequitable to allow attorney’s fees under the facts of this case. The inequity would exist only if equitable estoppel exists, and we have found that the doctrine does not apply. The statutory procedure for entitlement to attorney’s fees under LSA-R.S. 9:2781 were complied with, the award of attorney’s fees was not error, and the amount awarded was not an abuse of discretion.
For the foregoing reasons we affirm the judgment of the trial court at appellant’s costs.
AFFIRMED.