MARVIN, Chief Judge.
In this action on an open account for printing, we reverse the judgment against the defendant advertising agency which ordered the printing done for one of its clients, Johnny’s Pizza House, Inc., shortly before the client went into bankruptcy reorganization in mid-1989.
The trial court found that the defendant, Ad Group, did not meet its burden of proving the defense of agency and rendered judgment for the printer, Tri-Star. Considering evidence about the dealings between the litigants and about industry custom on allocation of responsibility for payment between the advertising company and the client, the trial court found that Ad Group followed “the normal procedure in the industry ... [which is] for the advertising company to purchase materials and then sell them to the client rather than merely to act as an agent.”
This record, with or without the “industry custom” evidence, does not support the trial court’s conclusion that Ad Group, as a principal debtor, “purchased” printed material from Tri-Star and “resold” the material to Johnny’s Pizza. Instead, the evidence shows a classic agency relationship: Ad Group ordered and paid for Tri-Star’s printing services solely as agent for Johnny’s Pizza, whose identity as Ad Group’s client or principal was known to Tri-Star from the outset. Ad Group did not exceed its authority or agree to pay the debt, whether as principal debtor or as guarantor. CC Arts. 3012-3013.
On these facts, Ad Group is legally absolved of liability to Tri-Star for the work that Tri-Star performed for Johnny’s Pizza. H.U. Young, Inc. v. Duke Advertising Agcy., 478 So.2d 1003 (La.App. 4th Cir. 1985).
FACTS
Tri-Star and Ad Group did business with each other for about a year before this dispute arose in the fall of 1989. During this time, Ad Group placed orders with TriStar for at least ten different clients, including Johnny’s Pizza. Tri-Star billed Ad Group, rather than Ad Group’s clients, for the work, issuing separate invoices for each order so that each invoice reflected charges for only one of Ad Group’s clients. At the top of each invoice were sections marked “Sold To” and “Shipped To.” Only Ad Group’s name and address appeared in these sections. In the section of the invoice which describes “work done,” the name of Ad Group’s client was stated.
When orders were placed with Tri-Star by Ad Group for Johnny’s Pizza, Tri-Star submitted proofs of the proposed printing work to Ad Group’s art director, who presented the proofs to Johnny’s general manager or advertising director for their approval, which they acknowledged by signing and returning the edited proofs. TriStar then filled the order. Tri-Star delivered the finished work either to Ad Group’s Monroe office, to Johnny’s Pizza office in West Monroe, or to a direct mail marketing service in Shreveport, as Ad Group directed on instructions from Johnny’s Pizza. Regardless of where Tri-Star made delivery, Tri-Star showed on its invoices that all orders were “shipped to” Ad Group’s office in Monroe.
*1384 After receiving invoices from Tri-Star or another media provider, Ad Group billed its client for the charges of the provider, and for Ad Group’s commission or retainer fee. Ad Group did not charge Johnny’s for its services on a commission basis, but charged a monthly retainer of $2,000.
Ad Group usually paid Tri-Star after it was paid by its client. On at least two occasions, Ad Group paid Tri-Star before Ad Group was paid by Johnny’s, but did so in reliance on verbal assurances from Johnny's that the payment was on the way. On the first occasion, Johnny’s Pizza paid as it promised. On the second occasion, a misunderstanding arose over which invoice was being paid, causing Johnny’s to pay Ad Group about $15,000 less than the amount that Ad Group paid to Tri-Star. Johnny’s listed the amount of the underpayment to Ad Group as a debt owed to Ad Group in its bankruptcy filings.
Tri-Star’s invoices to Ad Group showed the term for payment as “net 30 days.” Tri-Star also sent Ad Group a monthly statement showing amounts that were current, over 30 days, over 60 days and over 90 days. The statements listed only the outstanding invoice numbers and did not identify Ad Group’s clients by name. TriStar’s major shareholder/officer, Michael Guidry, regularly met with Ad Group’s bookkeeper, Brent Scott, to review the monthly statements, particularly on the charges that were more than 60 days old.
Guidry brought copies of the outstanding Tri-Star invoices to his meetings with Scott. From these invoice copies or from his own records, Scott determined the name of Ad Group’s client corresponding to each Tri-Star invoice and wrote the client’s name next to the invoice numbers on the Tri-Star monthly statement. Scott then informed Guidry whether Ad Group’s client had paid Ad Group and if not, when the client promised payment. Based on what Scott told him, Guidry wrote notes on his copies of the invoices. In his meetings with Scott, Guidry at no time demanded that Ad Group immediately pay any or all amounts shown as past due on the monthly statements before Ad Group received payment from its client.
Before this dispute arose, Guidry met informally with Ad Group’s president, Penny Doughty, about some unpaid invoices, telling her, “I’m looking to you for this money.” Ms. Doughty told Guidry, “I’m not liable for this money or any money.” Thereafter, Tri-Star continued to do work for Ad Group’s clients, including Johnny’s Pizza, and to bill Ad Group for the work. The litigants do not dispute the essential content of the conversation between Ms. Doughty and Guidry.
Guidry acknowledged that Tri-Star had no written agreement with Ad Group, as guarantor or as principal debtor, either before or after Ms. Doughty’s verbal disclaimer of Ad Group’s liability for TriStar’s charges. Having worked in the printing business for over ten years, Gui-dry agreed that he knew that Ad Group’s funds for paying vendors such as Tri-Star came from the payments Ad Group received from its clients. Guidry explained he never agreed with Ad Group that the responsibility for paying Tri-Star rested with the client rather than with Ad Group in cases where the client failed to pay Ad Group for Tri-Star’s invoices.
THE EXPERT TESTIMONY
Tri-Star called as expert witnesses Michael Rasco and Stephen Kelly, the owners of two other advertising agencies in Monroe which do business with Tri-Star. Ras-co and Kelly were accepted as experts “in the general field of advertising agency and particularly with respect to the standard practices for financial responsibility [for business placed] with media such as commercial printers.” Ad Group objected to testimony about standard business practices or industry custom, arguing that the case should be decided by applying the law of agency to the facts of the case. The trial court overruled Ad Group’s objections.
Rasco and Kelly testified that invoices for printing work are sent directly to their *1385 agency rather than to their respective clients. Both said that while they generally do not pay the invoices until they are paid by their client, they consider their agency to be responsible for paying the printer even if their client does not pay them.
Rasco testified:
I’m no expert in law, but if I received the bill, I’m assuming I’m responsible for it.
Q. What do you feel to be the custom or standard practice in the industry with respect to financial responsibility of advertising agents for business placed with commercial printers?
... it’s back to the agency. They’re responsible for[,] assume liability for an invoice that they receive.
Kelly expressed the same opinion as Ras-co. We emphasize, however, that both Kelly and Rasco acknowledged that the custom or practice in the industry is not uniform and that some advertising agencies consider themselves liable to a media provider such as a printer only after the agency has been paid by its client.
Ad Group presented expert testimony from Vernon McCrory, retired Chairman Emeritus of The News-Star, and Ken Hawkins, general sales manager of KNOE-TV. Both witnesses were accepted as experts “in the area of assessing the financial responsibility of advertising agents in connection with media purchases” in their respective fields, newspaper and television.
McCrory testified that if an advertiser places a newspaper ad through an advertising agency, the newspaper bills the advertiser for payment and does not try to collect from the agency if the advertiser does not pay the newspaper.
With respect to television advertising, Hawkins said, “We look to the [advertising] agency for payment of the account provided the end user has paid the agency. Once the agency has proved to us that they have not been paid by the client, then we reserve the right, and it is in writing, that we can go direct to the principal for payment.”
Several witnesses, both lay and expert, testified about the policies of the American Association of Advertising Agencies, a voluntary national organization in which Ad Group is not a member, on agency liability for unpaid media contracts. Under the AAAA policy in effect in 1988-89, the agency was solely liable. Shortly before trial in 1991, AAAA changed its policy to one of sequential liability, meaning that the agency is not liable to the media provider until the agency has been paid by its client.
Ad Group had no written agreement with Tri-Star but had a written agreement with Johnny’s Pizza, signed on May 5, 1988, which provided in part:
Johnny’s Pizza House, Inc. will retain full financial liability for all approved media, printing and related advertising expenses. However, The Advertising Group, Inc., as agent of record, becomes liable for payment upon receiving payment from Johnny’s Pizza House, Inc.
Tri-Star did not open for business until July 5, 1988, two months after the agreement between Ad Group and Johnny’s Pizza was signed and mailed to certain media providers. Tri-Star did not receive a copy of that agreement, or of a July 8, 1988 notice on Ad Group stationery, signed by Johnny’s vice-president, stating that Ad Group “is the agency of record for Johnny’s Pizza House.... Johnny’s Pizza House will be the responsible party for payment of any ads that run.” Tri-Star knew, however, that Ad Group was the advertising agency for Johnny’s Pizza when Tri-Star first filled Ad Group’s orders for printed advertising for Johnny’s in July 1988.
TRIAL COURT FINDINGS
In finding that Ad Group did not meet its burden of proving the defense of agency, and was therefore liable to Tri-Star as a principal debtor, the trial court said:
The [Tri-Star] invoices clearly show that the merchandise at issue was sold to the Ad Group.
*1386 [Ad Group] would have the Court believe the invoices show otherwise because the description of the ordered materials identify them as concerning Johnny’s Pizza. This description, given apparently for purposes of identification of the product delivered and charged for, in no way establishes that Ad Group was operating as an agent. It ... served to notify [TriStar] of the ultimate destination of its merchandise ...
Based upon testimony and the exhibits presented, the Court is convinced that the normal procedure in the industry at the time of these invoices was for the advertising company to purchase materials and then sell them to the client rather than merely to act as an agent. In addition Ad Group on several instances made payment to Tri-Star before receiving same from its client, Johnny’s Pizza. This practice demonstrates [Ad Group’s] own apparent belief that the relationship with Johnny’s Pizza was not one of agency-
DISCUSSION
No witness, lay or expert, characterized the transactions here as a “sale and resale.” No witness said or implied that the “normal procedure in the industry ... was for the advertising company to purchase materials and then sell them to the client rather than merely to act as an agent.” On the contrary, all witnesses, whether for one or the other litigant, shared the understanding that media products or services ordered by an advertising agency for a disclosed principal are ordered for and used by the agency’s particular client, whose identity is apparent from the content of the advertising, even where the agency is directly billed by the media provider.
Tri-Star’s expert witnesses did not purport to say or suggest that the relationship between an advertising agency and its client is other than a principal and agent relationship, even when the agency is directly billed. Tri-Star’s experts said clearly that their respective agencies and some, but not all, other agencies “assumed” liability for printing charges ordered by, and directly billed to, the agency.
Tri-Star knew that the printed material at issue was ordered for, used by, and sometimes delivered to, Johnny’s Pizza, notwithstanding that Tri-Star received the orders from and sent the bills to Ad Group. The invoice language stating that the work was “sold to” Ad Group does not, of itself, prove that Ad Group agreed to be bound for payment as a principal debtor. See and compare Succession of Drake, 359 So.2d 249 (La.App.2d Cir.1978).
The liability of an agent to a third person is governed by CC Arts. 3012 and 3013:
Art. 3012. Acts beyond power with third person informed of authority.
The mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee.
Art. 3013. Mandatary’s liability to third persons.
The mandatary is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers.
Tri-Star did not contend at trial that Ad Group exceeded its authority or personally guaranteed the debt. For the first time on appeal, Tri-Star suggests that Ad Group “guaranteed” the debt by twice paying Tri-Star before being paid by Johnny’s Pizza. Conduct does not create a guaranty agreement. A guaranty agreement must be in writing and must contain an explicit expression of an intent to be bound for the payment of another’s debt. CC Art. 3038; Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App.2d Cir.1982).
Ad Group did not “assume” liability for payment of Tri-Star’s printing charges, but rather expressly disclaimed that liability in the conversation, summarized above, be *1387 tween Guidry and Doughty. Tri-Star had no agreement with Ad Group, verbal or written, in which Ad Group undertook responsibility for payment of Tri-Star’s charges, whether as principal debtor or as guarantor. Ad Group rarely paid Tri-Star before being paid by a client and did so only after being assured by the client that the payment to Ad Group was on the way.
We must conclude, on this record, the trial court was clearly wrong in finding that Ad Group was not acting as agent for Johnny’s Pizza in its dealings with TriStar. See and compare J.T. Doiron, Inc. v. Lundin, 385 So.2d 450 (La.App. 1st Cir. 1980) and Ruckman v. Mashburn, 428 So.2d 531 (La.App. 4th Cir.1983).
The evidence of industry custom or practice concerning an advertising agency’s financial responsibility, which Ad Group claims was inadmissible, simply does not purport to show what the trial court found, i.e., that the normal practice was for the agency to “purchase materials and then sell them to the client rather than merely to act as an agent.”
Assuming solely for discussion purposes that the evidence was admissible, we agree with Ad Group’s contention that evidence of industry custom or practice cannot be used as a basis for imposing liability on Ad Group when the evidence as a whole overwhelmingly establishes that Ad Group acted on behalf of a disclosed principal in its dealings with Tri-Star and did not exceed its authority or agree to be personally bound for payment of the debt.
Under these circumstances, Ad Group is legally absolved of liability to Tri-Star under CC Arts. 3012-3013, notwithstanding the evidence that some advertising agencies “assume” that they are liable to a third party for charges incurred on behalf of a disclosed principal. Custom may not abrogate legislation. CC Art. 3. See also and compare Texoma Broadcasters v. Hosp. Corp. of Am., 542 So.2d 780 (La. App. 3d Cir.1989), writ denied, and H.U. Young, Inc. v. Duke Advertising Agcy., supra.
DECREE
We reverse the judgment appealed and render judgment dismissing Tri-Star’s action, with prejudice, at Tri-Star’s cost.
REVERSED AND RENDERED.