723 So.2d 1101 (1998)
Bert A. FEIBER
v.
Charles J. CASSIDY.
No. 98 CA 0405.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*1102 Wood Brown, III, New Orleans, for Plaintiff/Appellant, Bert A. Feiber.
Curtis Allen Hennesy, New Orleans, for Defendant/Appellee, Charles J. Cassidy.
BEFORE: SHORTESS, C.J., CARTER, and WHIPPLE, JJ.
CARTER, J.
This appeal arises from a minority shareholder's sale of his stock in a small Louisiana bank to the majority shareholder.

BACKGROUND
Plaintiff, Bert Feiber (Feiber) owned 175 shares of stock in First State Bank and Trust Company (FSB) until December 1993. In 1992, Feiber began calling the office of Charles J. Cassidy (Cassidy), the majority shareholder, chairman of the board of directors and CEO of FSB, in an effort to negotiate the sale of Feiber's 175 shares of stock. Feiber's attempts and offers to sell his stock continued until Cassidy agreed to purchase the shares of stock in September 1993. Cassidy told his secretaries to ask *1103 Feiber what price he was seeking for his shares of FSB stock. Cassidy took this action because he feared that word would get out that a shareholder could not find a buyer for his stock, or that Feiber would advertise his stock for sale in the newspaper. Cassidy felt that either of these actions would be derogatory to the image of FSB. The parties agreed on a sale of the stock for $75.00 per share. Cassidy prepared a check for $13,125.00, which he left with his secretaries for Feiber.
As of early December, Feiber had not picked up the check. When Cassidy's secretary called Feiber, he stated that he wanted $100.00 per share instead of $75.00. Cassidy agreed to this increased price per share for the same reason that he agreed to re-purchase Feiber's shares of stock in September. Accordingly, Cassidy left a check for $17,500.00, which Feiber picked up from Cassidy's office. According to a stipulation by Feiber, the sale was confected on December 21, 1993.
Feiber alleges that when the sale was confected, he asked Cassidy whether there was "any other sale of the bank contemplated" and whether there was "any possibility of the sale of the stock of the bank." Feiber alleges that Cassidy responded in the negative to both questions.

FACTUAL AND PROCEDURAL HISTORY
Steve Hansel (Hansel) was in charge of the merger program at Hibernia National Bank (Hibernia) in 1993. In late November or early December 1993, Hansel called Cassidy to request a meeting. When Hansel met with Cassidy and Cassidy's son, Charles M. Cassidy (Mike) on December 3, 1993, they discussed corporate banking business, the banking business in general and the goals of Hibernia. During this informal meeting, Hansel mentioned to Cassidy that "if and when" Cassidy decided to sell FSB, Hibernia would be interested in being considered as a potential purchaser. Other than this statement, there was no mention of any merger or other form of acquisition between FSB and Hibernia during the December 3, 1993 meeting.
The parties exchanged some written correspondence subsequent to the December 3 meeting. Additionally, Hansel met with Cassidy and Mike again in January 1994, discussing more of the same things that were discussed in the previous meeting. Neither these meetings nor the exchange of correspondence led to the eventual negotiated purchase of FSB by Hibernia.
In April 1994, Cassidy hired Austin and Associates, an investment banker, to solicit the interest of banks who may be interested in purchasing FSB. Hibernia received notice of FSB's apparent interest in selling and placed a bid for FSB. At the close of the bidding period, FSB accepted the bid from another bank. However, when FSB's first choice withdrew from consideration, FSB accepted Hibernia's offer. The announcement of the merger was made on August 16, 1994, and the actual merger was consummated on December 31, 1994.
Feiber received notice of the proposed merger between FSB and Hibernia through the news media on August 17, 1994. He subsequently filed suit against Cassidy arguing that Cassidy breached his fiduciary duty owed to Feiber by not disclosing the potential for the merger with Hibernia when the parties agreed on the price of Feiber's stock in December 1993. Feiber also asserted a claim against Cassidy under the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401 et seq (LUTPA).
Cassidy filed a motion for summary judgment arguing the suit against him should be dismissed because he owed neither a fiduciary nor general tort duty to Feiber to inform him of the December 3 meeting with Hibernia. Cassidy reasoned that nothing "material" was discussed at the meeting; therefore, disclosure to the shareholders was not required under state or federal securities laws. Additionally, Cassidy asserted that the undisputed facts clearly show that his "negative" response to the questions concerning a future sale or merger of the bank allegedly asked by Feiber when the sale was consummated between Feiber and Cassidy was truthful. Cassidy further asserted that LUTPA did not apply to securities transactions; *1104 thus, Feiber had no LUTPA claim against Cassidy.
The trial court granted Cassidy's motion for summary judgment and dismissed Feiber's claims against Cassidy. The trial court found that there was no "material" information disclosed at the December 3 meeting. Therefore, Cassidy did not owe a duty to Feiber to disclose the substance of the meeting between Cassidy and Hansel which took place before the sale of Feiber's stock was consummated because there was no material information to disclose to Feiber. Further, the trial court concluded that LUTPA did not apply to securities transactions.
Feiber appeals from the judgment in favor of Cassidy asserting three assignments of error. First, Feiber argues that the trial court's grant of summary judgment was improper because there were material issues of fact in dispute. Second, Feiber contends that the existence of a fiduciary relationship between him and Cassidy precluded a grant of summary judgment in favor of Cassidy. Finally, Feiber asserts that the trial court erred in dismissing his claim against Cassidy under LUTPA.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97); 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo v. Walker, 704 So.2d at 32-33.

EXISTENCE OF DISPUTED ISSUES OF MATERIAL FACT
Feiber argues that there were disputed issues of material fact which precluded a grant of summary judgment by the trial court. As an example, Feiber asserts it was disputed who set the initial sale price for the stock at $75.00 a share. Feiber also argues that there was "continuous contact" between Cassidy and Hibernia in the form of meetings and correspondence between December 3, 1993, and March 17, 1994, and that Cassidy failed to show that he spoke to Feiber about the merger negotiations.
We do not find these facts to be disputed issues of material fact. For purposes of summary judgment, a fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of the legal dispute. Genusa v. Dominique, 97-0047, p. 4 (La.App. 1st Cir.2/20/98); 708 So.2d 784, 787.
First, we note that Cassidy acknowledged, for the purpose of the summary judgment, that he did not disclose to Feiber the fact that there was a December 3 meeting with Hibernia, nor did Cassidy inform Feiber of Hibernia's interest in FSB "if and when" *1105 Cassidy decided to sell. Also, for the purpose of the motion for summary judgment, Cassidy does not dispute that there were contacts between him and Hibernia personnel after the December 3 meeting. Therefore, these facts are not in dispute for our determination of the propriety of the trial court's grant of summary judgment in favor of Cassidy. Nor do we find that these factors contradict Cassidy's denial that he was contemplating selling the bank or its stock at the time of the purchase from Feiber.
Next, regarding the alleged dispute over who set the initial offer at $75.00 a share, we cannot say that this fact is a material fact. We fail to see how the determination of who established $75.00 as the price at which the stock would be sold is material to whether or not Cassidy was contemplating selling the bank or his stock in the bank in December 1993, especially where the price was ultimately raised to $100.00 per share at the request of Feiber. Accordingly, there is no merit in Feiber's first assignment of error.

FIDUCIARY DUTY
In his second assignment of error, Feiber argues that Cassidy owed a fiduciary duty to Feiber which precluded summary judgment. Feiber asserts that Cassidy breached the fiduciary duty when he failed to give Feiber information about the meeting with Hansel. This inaction by Cassidy allegedly enabled him to purchase the stock from Feiber at a seriously reduced price. Inherent in this argument is a contention that the withheld information was material. We disagree.
Persons who have fiduciary duties may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of the person or entity to which they owe that duty. Noe v. Roussel, 310 So.2d 806, 819 (La.1975). However, the duty of a director or officer or third party purchasing stock is only to disclose to the seller information that he possesses that is material to the transaction. See Basic Incorporated v. Levinson, 485 U.S. 224, 238, 108 S.Ct. 978, 986-87, 99 L.Ed.2d 194 (1988). Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information. The standard does not vary because the insider may have profited. Basic Incorporated v. Levinson, 485 U.S. at 240, n. 18, 108 S.Ct. at 988, n .18. Moreover, the mere fact that an investor may find information interesting or desirable is not sufficient to satisfy the materiality requirement. Information is material only if its disclosure would alter the "total mix" of facts available to the investor and if there is a substantial likelihood that a reasonable shareholder would consider it important to the investment decision. Milton v. Van Dorn Company, 961 F.2d 965, 969 (1st Cir.1992).
The materiality of merger discussions in a particular case depends on the facts of the particular case. To assess the probability that the merger will occur, one must look to indicia of interest in the transaction at the highest corporate levels. Among the factors which exemplify indicia of interest in a transaction at the highest corporate levels are passage of board resolutions, instructions to investment bankers, and actual negotiations between principals or their intermediaries. Basic Incorporated v. Levinson, 485 U.S. at 239, 108 S.Ct. at 987.
Because we have found that Cassidy did not misrepresent any information to Feiber, we can only find a breach of Cassidy's fiduciary duty if the information was material to the sale of stock from Feiber to Cassidy. If the information obtained by Cassidy from Hansel was not material to the sale of Feiber's stock to Cassidy, then Cassidy had no duty to reveal this information to Feiber and thus, did not breach his fiduciary duty. Whether withheld information is material depends on the significance the reasonable investor would attach to the withheld information. Basic Incorporated v. Levinson, 485 U.S. at 240, 108 S.Ct. at 988. Therefore, despite the fact Feiber contends he considered the information obtained by Cassidy at the December 3 meeting to be material, it is the consideration of a reasonable investor that matters.
It is undisputed that the only information Cassidy obtained at the December 3 meeting was that Hibernia was interested in being considered as a potential purchaser of FSB *1106 "if and when" Cassidy decided to sell the bank. Hansel testified in his deposition that there were no discussions of mergers, nor were there any negotiations or talks about price. These facts are confirmed by Cassidy and his son Mike in their affidavits. We do not find that this unsolicited basic expression of future interest in a speculative event is material information which Cassidy was required to disclose to Feiber when the sale of Feiber's stock was consummated.
Moreover, the fact that the minutes from Hibernia's December board of directors meeting list FSB under a heading entitled "Merger Prospects" does not demonstrate that Cassidy was considering merging FSB with Hibernia. In his deposition, Hansel explained that Hibernia considers or targets many banks as potential merger or acquisition prospects. However, this categorization does not mean any merger was discussed at the December 3 meeting. Hansel clearly testified, and Cassidy and Mike swore through affidavits, that there were no discussions of a merger or other acquisition between FSB and Hibernia at the December meeting. Moreover, the "Comments" section of this heading regarding FSB indicated that only "exploratory discussions" took place. Feiber came forward with no other evidence to prove his claim.
Further, we note that FSB did not contact an investment banker until April 1994, and Hibernia's bid was not the first one accepted by FSB. Therefore, there was no evidence of any connection between the December 3 meeting and the ultimate merger between FSB and Hibernia. Accordingly, summary judgment was properly granted in favor of Cassidy, and this assignment of error lacks merit.

APPLICABILITY OF LOUISIANA UNFAIR TRADE PRACTICES ACT
In his supplemental petition, Feiber alleged that Cassidy was liable to him under LUTPA. Cassidy sought to have this claim dismissed through the motion for summary judgment, arguing that Feiber's claim involved the sale of a security to which LUTPA does not apply. Feiber acknowledges that there is Louisiana appellate court jurisprudence which relies on federal cases from Louisiana and the United States Fifth Circuit Court of Appeal which hold that LUTPA does not apply to securities transactions. However, because there is no first circuit or Louisiana Supreme Court jurisprudence on this issue, plaintiff contends that a decision on this issue should be postponed until the final result is reached in this case.
Because we find that summary judgment was properly granted in favor of Cassidy on the issues of Feiber's other theories of recovery, we will address the issue of whether Feiber can assert a claim under LUTPA. We find that he cannot.
This case involves the sale of stock in a bank which is undeniably a security transaction. In Taylor v. First Jersey Securities, Inc., 533 So.2d 1383 (La.App. 4th Cir.1988), writs denied, 538 So.2d 593, 594 (La.1989), our brethren of the fourth circuit stated as follows:
No Louisiana court has ruled on whether the [L]UTPA applies to securities violations. However, in two decisions, federal courts in Louisiana have held that the [L]UTPA is not applicable to securities violations. Stephenson v. Paine Webber, Jackson & Curtis, 839 F.2d 1095 (5th Cir. 1988), rehearing denied, 849 F.2d 901 (5th Cir.1988) [cert. denied, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988)]; Moore v. A.G. Edwards & Sons, Inc., 631 F.Supp. 138 (E.D.La.1986). Our review of the applicable statutes and the federal cases convinces us that the federal court decisions are correct.
In Stephenson, supra, the Fifth Circuit delineated two reasons the [L]UTPA should not be applied to securities violations. First, the court noted that treble damages are available under the [L]UTPA, but not under the Blue Sky laws. Id. at 1101. The court concluded that the legislature would have provided for treble damages in the Blue Sky laws had it intended for treble damages to be available for securities violations. Id. Second, the Fifth Circuit noted that the federal analogue to the [L]UTPA, the Federal Trade Commission Act, has been interpreted to preclude securities *1107 violations. Id. Finally, the court found that allowing securities claims under the [L]UTPA would be inconsistent with the state statutory scheme for remedying securities violations because there would be a "functional overlap" between the investigative and enforcement duties of the Governor's Consumer Protection Agency, charged with those responsibilities under the [L]UTPA, and the duties of the state banking commissioner [Commissioner of Financial Institutions] under the Blue Sky laws. Id.

We find the Fifth Circuit's reasons for excluding securities violations from the [L]UTPA persuasive.
533 So.2d at 1387-88. We agree with our brethren of the fourth circuit that LUTPA does not apply to securities transactions. Accordingly, Feiber's claim under LUTPA was properly dismissed. This assignment of error is without merit.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Feiber is assessed with the costs of this appeal.
AFFIRMED.