# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2010

Charles R. Fulbruge III
Clerk

No. 09-30275

D & J TIRE INC,

Plaintiff–Appellant

v.

HERCULES TIRE & RUBBER CO; LAWRENCE B SEAWELL,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

D & J Tire Inc. ("Appellant") appeals the district court's grant of summary judgment in favor of Hercules Tire & Rubber Company and Lawrence B. Seawell, a Hercules officer (collectively, "Appellees"). Appellant, a former Hercules minority shareholder, sued Appellees for breach of fiduciary duty arising out of Seawell's failure to disclose that Hercules was in talks to be acquired by F$d$G Associates ("F$d$G") when Seawell served as a mandatary on Appellant's behalf to redeem Appellant's shares, and that Hercules is vicariously liable for Seawell's breach. Appellant also sought rescission of its stock redemption based on fraud by Hercules directors for not disclosing the acquisition discussions. Appellant claims that had it known of F$d$G's impending

No. 09-30275

purchase, it would not have redeemed its stock. Because we find that the grant of summary judgment was premature, we vacate and remand to the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hercules is a Connecticut corporation with its principal place of business in Ohio. During the relevant time period, Seawell served as Hercules' Chief Financial Officer ("CFO"), and resided in Ohio. Hercules operated a sales cooperative for tire retailers in Louisiana and other states. Appellant, a tire retailer, incorporated and domiciled in Louisiana, was one of Hercules' thirty-three stockholders, owning fourteen shares.

In September 2004, Hercules engaged Morgan Keegan & Company to conduct a business valuation, and to identify and approach potential buyers. By January 14, 2005, Morgan Keegan reported that the equity value of the business was roughly $78 million, or $63,000 per share, and that there were several interested buyers. On January 19, 2005, Appellant informed Hercules that it wished to redeem its stock and apply the proceeds to the $360,787.72 outstanding balance it owed Hercules. Seawell responded, in a letter dated February 2, 2005, that in order to complete the transaction, Appellant would need to execute a Stock Power of Attorney to Seawell. Seawell also informed Appellant that Hercules would honor redemption at 80 percent of book value because it considered Appellant's redemption a "hardship withdrawal." James Greer, an officer and agent for Appellant, executed the Stock Power of Attorney on behalf of Appellant on February 15, 2005. The document read:

> I, James W. Greer, hereby sell, assign and transfer unto The Hercules Tire and Rubber Company (14) Shares of Common Stock of THE HERCULES TIRE & RUBBER COMPANY standing in their name on the books of said corporation represented by of [sic] Certificate No. __ herewith and do hereby irrevocably constitute and appoint LAWRENCE B. SEAWELL attorney to transfer the said stock on the books of the with-in-named Company with full

2

No. 09-30275

power of substitution in the premises.

On February 21, 2005, Seawell sent an e-mail directing redemption of Appellant's stock for 80 percent of the book value of $26,380.07 per share.[1] The e-mail indicated that Hercules' board of directors (the "Board") had approved the redemption by consent. Hercules issued a credit memo applying the proceeds of the stock redemption to Appellant's outstanding balance, but the final director did not fax written consent until March 23, 2005.[2]

On March 4, 2005, the Board voted to move forward with the proposal by FdG, giving them an exclusive agreement to perform due diligence before a target sale date of April 30, 2005. The Board voted to approve the merger on April 26, 2005. The Board recommended that shareholders approve the merger, and, after receiving proxies, approved the merger by shareholder vote on May 9, 2005. FdG and Hercules executed the merger on May 11, 2005, and publicized the merger via press release. Pursuant to the merger agreement, the Hercules shareholders received more than $60,000 per share. On June 27, 2005, Appellant sent Seawell a letter accusing him of securities violations, fraud, and breach of fiduciary duty by failing to inform Appellant of the possibility of the FdG acquisition.

Greer and Appellant filed this lawsuit on May 15, 2008 in Louisiana state court. The complaint alleges that Seawell breached his fiduciary duty by failing to disclose the material fact of the merger discussions; that Hercules was vicariously liable for Seawell's breach; and that Hercules suppressed the fact

---

[1] Hercules later credited Appellant's account so that it received 100 percent of its shares' book value.

[2] The parties disagree over the date that the redemption occurred under Connecticut law for purposes of whether facts known to Seawell and other directors were material at the time. We express no opinion on that matter because it is a fact question more appropriately determined on remand.

3

No. 09-30275

that F*d*G was actively pursuing the acquisition of its shares, rendering Appellant's consent to redemption invalid and entitling Appellant to rescission. Hercules and Seawell removed the case to federal court.

Appellees filed a motion to dismiss and a motion for partial summary judgment which the district court converted into a motion for summary judgment. The district court found that the Stock Power of Attorney created only a "limited mandate," without fiduciary duties, because the mandate only gave Seawell power to effect the actual transfer of property to the board upon consent, and because the parties had agreed to the terms of the redemption before appointing Seawell as mandatary.

As a result, the district court reasoned, any breach of fiduciary duty must stem from Seawell's duty to shareholders as an officer of Hercules. The district court did not specifically address Appellant's rescission claim, but found that all claims for breach of the directors' general fiduciary duty to shareholders were prescribed under Louisiana corporations law, because shareholder suits against officers and directors for breach of their fiduciary duties must be brought within two years. *See* LA. REV. STAT. ANN. § 12:96. The district court also found that Greer lacked individual standing to maintain his claims. The district court granted Appellees summary judgment on all claims. This appeal followed.[3]

## II. DISCUSSION

We review the "grant of summary judgment *de novo*, applying the same standards as the district court." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 233 (5th Cir. 2009) (citing *Mack v. City of Abilene*, 461 F.3d 547, 555 (5th Cir. 2006)). "Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fact questions are viewed in the light most favorable to the nonmoving party and questions of law

---

[3] Greer did not appeal.

4

are reviewed *de novo.*" *Floyd v. Amite County Sch. Dist.*, 581 F.3d 244, 247–48 (5th Cir. 2009) (citations omitted).

## A.    Choice of Law

We must first determine whether the district court properly applied Louisiana law to Appellant's claims. Because Appellant filed this case in Louisiana, we apply Louisiana's choice of law rules. *See Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("In a diversity action, a federal court must apply the choice of law rules of the state in which the district court where the complaint was filed sits."). We must "determine as best [we] can what [Louisiana's] highest court would decide regarding the appropriate choice of law rule." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 646 (5th Cir. 2002) (citing *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)). Louisiana choice of law statutes mandate that we apply the law of the state whose "policies would be most seriously impaired if its law were not applied to that issue." *See* LA. CIV. CODE ANN. arts. 3515, 3539 & 3542. We have recently held that Louisiana law requires that "the law of the place where the corporation was incorporated [governs] disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties." *Torch Liquidating Trust*, 561 F.3d at 385 n.7 (citations omitted).

We find that because Hercules is a Connecticut corporation, the district court should have applied Connecticut law to determine the scope of the fiduciary duties the directors owe to corporate shareholders. However, Louisiana law applies to Appellant's claim for breach of fiduciary duty based on Seawell's duties as mandatary because Seawell and Appellant entered into the mandate in Louisiana, and Louisiana's policies would be most seriously impaired if another state law applied to actions by Louisiana citizens for breach of mandates entered into in Louisiana. Louisiana's policies would also be most

seriously impaired if another state's law applied to actions by Louisiana citizens for rescission of contracts based on fraud. Therefore, we find that while Connecticut law controls the scope of the Board's duties, Louisiana law controls both the applicable prescriptive period and the question of whether a failure to fulfill those duties constitutes fraud warranting rescission of the contract.

## B.    Rescission Claim

### 1.    Prescription

Under Louisiana law, actions for rescission of a contract based on fraud must be brought within five years after the plaintiff discovers the fraud. LA. CIV. CODE ANN. art. 2032. Appellant filed its complaint on May 15, 2008, just over three years after Hercules announced its merger with F*d*G. This was well-within the prescriptive period.

The district court erred by applying the one year prescriptive period in Louisiana Revised Statute 12:96, because that statute only applies to "action[s] for damages against any director or officer for breach of his duty as a director or officer." The rescission claim does not seek damages and it is against Hercules, not a director or officer. Furthermore, Louisiana law provides that its corporate law does not apply to foreign corporations except "where express reference is made to foreign corporations." LA. REV. STAT. ANN. 12:175. Section 12:96 makes no such reference.

Because Louisiana's prescription statute does not bar Appellant's rescission claim, we must remand to the district court to determine whether Appellant can prove that Hercules's directors failed to disclose a material fact, thereby rendering Appellant's consent to the redemption null.

### 2.    Louisiana Fraud Law

Under Louisiana law, "[c]onsent of the parties is a requisite to the validity of a contract, and there is no valid consent where it has been produced by error," such as fraud. *Sonnier v. Boudreaux*, 673 So. 2d 713, 717 (La. Ct. App. 1996)

(citing LA. CIV. CODE ANN. art. 1948). "[S]ummary judgment is rarely proper in fraud cases because the intent requested to establish fraud is a factual question 'uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses.'" *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) (quoting *Beijing Metals & Minerals v. Am. Bus. Ctr.*, 993 F.2d 1178, 1185 (5th Cir. 1993)).

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE ANN. art. 1953. There are three elements to an action for fraud against a party to a contract: "(1) misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to circumstances substantially influencing the victim's consent to the contract." *Simmons v. Clark*, 8 So. 3d 102, 110 (La. Ct. App. 2009).

The defendant must have induced the plaintiff so that the plaintiff "must at least be able to say that had he known the truth, he would not have acted as he did to his detriment." *See Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1153 (La. Ct. App. 2001). "To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information." *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992).

### 3.    Duty to Disclose under Connecticut Law

As discussed above, Connecticut law governs whether a fiduciary duty exists, and if it does, the scope of that duty. Under Connecticut law, "[a]n officer [or] director occupies a fiduciary relationship to the corporation and its stockholders." *Katz Corp. v. T.H. Canty & Co., Inc.*, 362 A.2d 975, 978–79 (Conn. 1975) (citation omitted). "He occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all his

relationships with the corporation." *Id.* at 979. "It is essential to the validity of a contract between a fiduciary and a beneficiary containing matters within the scope of that relationship that a full disclosure be made of all relevant facts which the fiduciary knows or should know." *Pacelli Bros. Transp., Inc. v. Pacelli*, 456 A.2d 325, 329 (Conn. 1983).

Connecticut courts have not yet addressed whether directors and officers owe minority shareholders fiduciary duties when acquiring stock on the corporation's behalf. However, other courts have found that such a duty does exist.[4] Because Hercules' directors were acting in their official capacity when redeeming Appellant's stock, we find that Connecticut courts would impose a fiduciary duty to disclose material facts in this situation.

Having determined that Connecticut courts would impose a fiduciary duty, we now turn to the scope of that duty under Connecticut law. Because Connecticut courts would only require disclosure of material facts, Appellant must show that non-disclosed facts were material. The Supreme Court has stated that in order to show materiality under federal securities law, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quotation omitted). Although *Basic* does not control, it is persuasive. State courts have applied *Basic* outside of its original context, and we believe that Connecticut would likely adopt the *Basic* test if confronted with the issue. *See, e.g.*, *Alessi v. Beracha*, 849 A.2d 939, 946 (Del. Ch. 2004) (applying the

---

[4] *See, e.g.*, *Hardy v. S. Bend Sash & Door Co.*, 603 N.E.2d 895, 900 (Ind. Ct. App. 1992) ("A corporate director acting for the corporation in a purchase of its own stock stands in a fiduciary relationship with respect to the shareholder from whom the stock is purchased and is under a duty to disclose to the shareholder the facts affecting the value of the stock."); *Wood v. MacLean Drug Co.*, 266 Ill. App. 5, 15 (Ill. App. Ct. 1932) (finding that when directors buy on behalf of the corporation they act as trustees for the minority shareholder and are "bound to advise [the shareholder] of all the facts").

materiality test discussed in *Basic*); *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1205 (Colo. Ct. App. 2002) (same). Upon remand, Appellant must prove that before redemption of the stock, the acquisition discussions had progressed far enough along that there existed a "substantial likelihood" that a reasonable investor would have viewed the discussions as significantly altering the total mix of facts. *See Basic*, 485 U.S. at 231–32.

## C.    Mandate Claim

Contrary to the district court's analysis, we find that Appellant's claim against Seawell is not prescribed by Louisiana law. A claim for breach of a contract of mandate is subject to a prescriptive period of ten years. LA. CIV. CODE ANN. art. 3499. Appellant filed suit well within this period. There is no reason to apply another prescriptive period merely because Seawell was also CFO of Hercules when the claim is based on his duties as mandatary.

### 1.    Scope of the Mandate

The Louisiana Civil Code governs mandates (a common law agent) at articles 1985 through 3034. "These articles cover the nature and form of mandates, the obligations of a person acting under a power of attorney, and cases where a person is a mandatory [sic] or agent of both parties." *Texoma Broadcasters, Inc. v. Hosp. Corp. of Am.*, 542 So. 2d 780, 783 (La. Ct. App. 1989). "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LA. CIV. CODE ANN. art. 2989. "The contract of mandate is not required to be in any particular form." LA. CIV. CODE ANN. art. 2993.

"The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. He is responsible to the principal for the loss that the principal sustains as a result of the mandatary's failure to perform." LA. CIV. CODE ANN. art. 3001. "Therefore, it follows that a mandatary owes fiduciary duties to the principal." *Sampson v. DCI of Alexandria*, 970 So. 2d 55, 59 (La.

Ct. App. 2007); *see also Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992) ("[A] mandatory is a fiduciary . . . ."). "Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties." *Sampson*, 970 So. 2d at 59.

A mandatary must "disclose to his principal all facts relating to his principal's affair." *Woodward v. Steed*, 680 So. 2d 1320, 1325 (La. Ct. App. 1996) (citing *Robinson v. Thomson*, 31 So. 2d 734, 740–41 (La. 1947)). "It is the duty of an agent to make known to his principal all the true facts that he has knowledge of concerning the transaction and the subject matter of the agency." *Robinson*, 31 So. 2d at 740.

The district court found that the Stock Power of Attorney created a mandate. The district court, however, also found that the Stock Power of Attorney only created a "limited mandate" because Appellant had already agreed to the material terms of the redemption before entering into the contract of mandate. Appellant claims that the Stock Power of Attorney alone does not represent the scope of the mandate to which Seawell agreed and that the agreement contemplated a more substantial relationship. Appellant has not yet had the opportunity to fully litigate the scope of the mandate.

We must reverse because Louisiana law does not recognize the concept of a "limited mandate." The district court did not provide any support under Louisiana law for its finding of a "limited mandate," and no Louisiana court has ever suggested that a mandatary's duties depend on the principal's agreement to the underlying terms of the transaction. The extent of Seawell's fiduciary duties depends on the "subject matter of the agency." *See id*. Therefore, on remand, the district court should allow Appellant to present evidence of the scope of the agreement with Seawell.

## 2.    Materiality of Non-Disclosure

No. 09-30275

If Appellant shows that Seawell had a duty to disclose material facts to the transaction, Appellant must also show that the facts Seawell failed to disclose were material.  The district court must make this determination pursuant to Louisiana law.

Louisiana courts have explicitly adopted the *Basic* test, holding that "[m]ateriality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Feiber v. Cassidy*, 723 So. 2d 1101, 1105 (La. Ct. App. 1998).  "Information is material only if its disclosure would alter the 'total mix' of facts available to the investor and if there is a substantial likelihood that a reasonable shareholder would consider it important to the investment decision."  *Id.* (citing *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir. 1992)).

## III. CONCLUSION

Because we find that Louisiana law does not prescribe Appellant's claims, and that the district court erred in its interpretation of Louisiana law, we VACATE the district court's grant of summary judgment on Appellant's mandatary claim and on Appellant's rescission claim, and REMAND for further proceedings consistent with this opinion.

VACATED and REMANDED.